UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| KAMAL BISTA, | |
|---|---|
| Petitioner, | CASE NO. 2:26-cv-00358-BAT |
| v. | **ORDER GRANTING HABEAS PETITION AND GRANTING IN-PART INJUNCTIVE RELIEF** |
| PAMELA BONDI, et al., | |
| Respondents. | |

Petitioner Kamal Bista is a citizen and national of Nepal detained at the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Mr. Bista was taken into custody by U.S. Immigration and Customers Enforcement ("ICE") upon entry into the United States on January 21, 2025, and has been detained since. Mr. Bista asserts that his removal order became final on March 3, 2025, when an asylum officer and a supervisory asylum officer made a negative credible fear finding that was neither challenged nor reviewed. Dkt. 1, at 3; Dkt. 9-3. Having been detained for over a year, and over eleven months since his order of removal became final, Mr. Bista seeks habeas and injunctive relief. Dkt. 1, at 20. For the reasons stated below, the Court **GRANTS** Mr. Bista's habeas petition and **GRANTS IN-PART** injunctive relief. Among other provisions, the Court **ORDERS** respondents (the "government") to release Mr. Bista from detention within **TWENTY-FOUR (24) HOURS** of this order.

ORDER GRANTING HABEAS PETITION
AND GRANTING IN-PART INJUNCTIVE
RELIEF - 1

**BACKGROUND**

Mr. Bista is a citizen and national of Nepal with no known criminal history. Dkt. 1, at 6. On January 21, 2025, he crossed the border from Mexico into California and was arrested by ICE soon after entering the United States. Dkt. 9-1, at 2–3. He has been detained since that date. On January 22, 2025, the Department of Homeland Security ("DHS") determined that Mr. Bista was inadmissible and placed him into expedited removal procedures in accordance with 8 U.S.C. § 1225(b)(1). Dkt. 9-2, at 2–3. On March 3, 2025, an asylum officer and a supervisory asylum officer made a negative credible fear determination that Mr. Bista had not established that it was more likely than not that he would be tortured in Nepal. Dkt. 9-3, at 2. There is no indication that Mr. Bista requested review of that determination by an immigration judge or otherwise challenged that determination. By operation of law, the order of removal became final without further hearing or review once the negative credible fear finding was made. 8 U.S.C. § 1225(b)(1)(B)(iii). Had Mr. Bista sought review of the negative credible fear determination by an immigration judge, review would be concluded "as expeditiously as possible, to the maximum extent practicable within 24 hours, but in no case later than 7 days after the date of the determination." 8 U.S.C. § 1225(b)(1)(B)(iii)(III). Thus, though the parties dispute the proper statute to apply regarding Mr. Bista's continued detention, neither dispute that a final, unchallenged order of removal existed as of March 3, 2025. Mr. Bista has thus been detained for "expedited" removal for over eleven months beyond his final order of removal, and for over a year in total, without the government having provided any indication of when he will be removed or whether any travel documents have been sought or obtained.

ORDER GRANTING HABEAS PETITION
AND GRANTING IN-PART INJUNCTIVE
RELIEF - 2

DISCUSSION

**1. 8 U.S.C. § 1231(a) Governs Mr. Bista's Detention**

The government argues that Mr. Bista's detention is governed by 8 U.S.C. § 1225(b)(1), which has different standards and requirements concerning detention than are present in 8 U.S.C. § 1231(a), the statute that forms the basis for challenges to indefinite detention involving a final order of removal. The Court finds that 8 U.S.C. § 1231(a) governs Mr. Bista's prolonged detention in accordance with a final order of removal.

The government does not argue that a final order for Mr. Bista's removal does not exist, only that 8 U.S.C. § 1225(b)(1) should continue to apply regardless of whether there is a final order of removal and no matter how long the "expedited" removal is delayed. This position is unpersuasive. In *Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018), the Supreme Court explained that "[r]ead most naturally, § 1225(b)(1) . . . mandate[s] detention of applicants for admission until certain proceedings have concluded." 583 U.S. 281, 297 (2018). Under § 1225(b)(1), "applicants for admission "are detained for 'further consideration of the application for asylum[.]" *Id.* (quoting 8 U.S. § 1225(b)(1)). However, "[o]nce those proceedings end, detention under § 1225(b) must end as well." *Id.* As the Ninth Circuit explained, "[o]nce an alien has a final removal order that is not subject to a judicial stay, detention authority shifts [from 8 U.S.C. § 1225(b)(2)] to 8 U.S.C. § 1231(a)." *Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2021 (citing *Jennings*, 583 U.S. at 298); *see also Noah Zhe v. Green*, 2017 WL 4407934, at *2 (D.N.J. Oct. 4, 2017) ("Post-removal immigration detention is governed by 8 U.S.C. § 1231, which creates a ninety-day removal period during which the government must detain [noncitizens] still awaiting removal.").

The Immigration and Nationality Act ("INA") provides separate procedures for a distinct form of removal—"expedited removal"—which permits the fast-tracked removal of noncitizens who meet certain statutorily-prescribed criteria (which are determined by reviewing immigration officers). *See* 8 U.S.C. § 1225(b)(1). Expedited removal procedures "appl[y] primarily to [noncitizens] seeking entry into the United States ('applicants for admission' in the language of the statute)." *Jennings*, 583 U.S. at 297. Apart from consideration of requests for asylum, 8 U.S.C. § 1225(b)(1)(A)(ii), noncitizens subject to expedited removal are not afforded the procedural protections available in standard removal proceedings. See 8 U.S.C. § 1225(b)(1). Specifically, once "an immigration officer determines" that an applicant for admission "is inadmissible," "the officer shall order the [noncitizen] removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(A)(i). However, if the applicant "indicates either an intention to apply for asylum . . . or a fear of persecution . . . the officer shall refer the [noncitizen] for an interview by an asylum officer[.]" 8 U.S.C. § 1225(b)(1)(A)(ii). Where the asylum officer finds a credible fear of persecution, the applicant "shall be detained for further consideration of the application for asylum." 8 U.S.C. § 1225(b)(1)(B)(ii). But if the officer determines the applicant does not have a credible fear of persecution, the officer "shall order the [noncitizen] removed from the United States without further hearing or review." 8 U.S.C. § 1225(b)(1)(B)(iii)(I). Noncitizens "subject to the procedures under this clause shall be detained pending a final determination of credible fear of persecution and, if found not to have such a fear, until removed." 8 U.S.C. § 1225(b)(1)(B)(iii)(IV). If a noncitizen seeks review of the negative credible fear determination by an immigration judge, the review "shall be concluded as expeditiously as possible," *viz*, within 24 hours "but in no case later than 7 days after the date of the determination." 8 U.S.C. § 1225(b)(1)(B)(iii)(III).

ORDER GRANTING HABEAS PETITION
AND GRANTING IN-PART INJUNCTIVE
RELIEF - 4

1     Mr. Bista's case is legally indistinguishable from the Court's recent case *Bhandari v.*
2  *Bondi*, 2026 WL 369403 (W.D. Wash. Feb. 10, 2026). In *Bhandari*, petitioner was a citizen and
3  national of Nepal taken into custody upon entry, was transferred to the NWIPC, was subject to a
4  final order of removal upon an immigration judge's affirmation of a negative credible fear
5  finding, and had been detained for over eight months since the order of removal became final.
6  Here Mr. Bista is a citizen and national of Nepal taken into custody upon entry, was transferred
7  to the NWIPC, is subject to a final order of removal for which timely review was neither sought
8  nor received, and has been detained for over eleven months since the order of removal became
9  final. That is, in *Bhandari*, the petitioner's order of removal became final because an
10 immigration judge affirmed the negative credible fear finding; here the order of removal became
11 final because no review of the negative credible fear finding was sought and the period by which
12 to complete the review passed no later than March 10, 2025. As in *Bhandari*, the Court here
13 finds that "[a]lthough Respondents' argument would carry the day if [petitioner] were still an
14 'applicant for admission' subject to procedures governed by § 1225(b), because [petitioner] is
15 now subject to a final order of removal, § 1231(a) governs his detention." *Bhandari*, 2026 WL
16 369403, at *3. As the *Bhandari* court observed, "Although the provisions of § 1231 might have
17 been inapplicable while Petitioner awaited the § 1225(b)(1) final determination on his credible
18 fear assertion, once that determination occurred, there is no reason to not apply the provisions of
19 § 1231. After all, § 1231 governs the detention, release, and removal of noncitizens who are
20 subject to a final order of removal." *Bandhari*, 2026 WL 369403, at *4 (quoting *Alnajjar v. GEO*
21 *Grp., Inc.,* 2025 WL 3853217, at *4 (W.D. Tex. Dec. 23, 2025)) (typographical modifications
22 omitted).
23

ORDER GRANTING HABEAS PETITION
AND GRANTING IN-PART INJUNCTIVE
RELIEF - 5

**2. Mr. Bista's Prolonged Detention is Unlawful**

Mr. Bista contends that his prolonged detention of nearly a year beyond his final order of removal is unlawful. He is correct.

Pursuant to § 1231(a), "[w]hen [a noncitizen] has been found to be unlawfully present in the United States and a final order of removal has been entered, the Government ordinarily secures the [noncitizen's] removal during a subsequent 90-day statutory 'removal period,' during which time the [noncitizen] normally is held in custody." *Zadvydas v. Davis*, 533 U.S. 678, 682 (2001). During the 90-day removal period, the Government "shall detain" the noncitizen. 8 U.S.C. § 1231(a)(2)(A). Once the 90-day removal period ends, the government may continue to detain certain noncitizens. *Id.* § 1231(a)(6). "[A noncitizen] ordered removed who is inadmissible …, removable[,] . . . or who has been determined by the Attorney General to be a risk to the community or unlikely to comply with the order of removal, may be detained beyond the removal period[.]" *Id.* However, the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. *Zadvydas*, 533 U.S. at 699. "A statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] … [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. Thus, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701. In challenging prolonged detention under § 1231, the petitioner bears the initial burden of providing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. Once that showing is made, the government "must respond with evidence sufficient to rebut that showing." *Id.* If the

government fails to meet its burden, then the noncitizen must be released from detention. *See Jennings*, 583 U.S. at 299.

      Having been detained for nearly a year since his final order of removal, Mr. Bista's detention is not "presumptively reasonable." *Zadvydas*, 533 U.S. at 701. Mr. Bista has met his burden to show that there is no significant likelihood of removal in the reasonably foreseeable future. He states that ICE has provided him no updates about the status of his travel documents, and he unaware of any information that would suggest progress has been made over the course of this past year. Dkt. 1, at 7. Mr. Bista contends that the governmental instability after a September 2025 protest toppled Nepal's government has contributed to ICE's inability to effectuate travel documents and cites a decision from this Court that recognizes the government's acknowledgment that it may take months from the government's request to the date on which travel documents are provided. Dkt. 1, at 7 (citing Kamal Dev Bhattarai¸ "Two Months After the Gen Z Upheaval, Nepal Struggles to Find Its Diplomatic Footing," *The Wire* (Nov. 16, 2025), *available* at https://thewire.in/south-asia/two-months-after-the-gen-z-upheaval-nepal-struggles-to-find-its-diplomatic-footing and *Sharad v. Bondi*, C25-2071-JLR, Dkt. 11, at 4 (W.D. Wash., Dec. 23, 2025)).

      In response, the government offers no evidence to rebut Mr. Bista's showing that there is no significant likelihood of removal in the reasonably foreseeable future. The government declines to state whether it has, in fact, sought travel documents for Mr. Bista, let alone provided an update on the status of any such request. Instead, the government concedes that Mr. Bista has not "caused delays through frivolous appeals or non-cooperation." Dkt. 8, at 6. The government states that it is "requesting a second credible fear finding to ensure the finding encompasses any and all forms of potential relief." *Id.* While such a request may be laudable, the government does

ORDER GRANTING HABEAS PETITION
AND GRANTING IN-PART INJUNCTIVE
RELIEF - 7

not suggest that this request was sought by Mr. Bista or explain how a second request to redetermine a finding already made at the port of entry might override the command in § 1225(b)(1)(B)(iii)(III) to complete any review of the negative credible fear determination within seven days of March 3, 2025. It would provide cold comfort to a noncitizen if the government could justify delaying the effectiveness of a final order of "expedited removal," and thereby prolong detention beyond what is statutorily and constitutionally permissible, simply by asserting that it had, in its magnanimity, requested another credible fear determination.

The government has failed to rebut Mr. Bista's showing. Mr. Bista is entitled to relief under *Zadvydas*, and the Court will grant his habeas petition.

### 3. The Court Grants In-Part Mr. Bista's Requests for Injunctive Relief

Mr. Bista also requests prospective injunctive relief adjacent to his habeas petition seeking protection in the event the government attempts to re-detain him or remove him to a third country. Specifically, he requests an order (a) that the government may not re-detain him without first holding a hearing before a neutral decisionmaker; and (b) that the government may not remove or seek to remove him to a third country without notice and a meaningful opportunity to respond.[1] Dkt. 1, at 20. The Court grants in-part and denies in-part these requests for injunctive relief.

#### a. Re-Detention

The Court finds that the government must comply with 8 C.F.R. § 241.13 in the event of re-detention. The regulation states, in part, that "[t]he Service may revoke [a noncitizen's] release under this section and return the [noncitizen] to custody if, on account of changed circumstances,

---

[1] The Court construes Mr. Bista's other, specific requests for relief that indicate the conditions for re-detention or removal to a third country as subcategories of these issues. *See* Dkt. 1, at 20.

ORDER GRANTING HABEAS PETITION
AND GRANTING IN-PART INJUNCTIVE
RELIEF - 8

the Service determines that there is a significant likelihood that the [noncitizen] may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13. The regulation also provides that, "[u]pon revocation [of an OSUP], the [noncitizen] will be notified of the reasons for revocation of his or her release," and that there will be "an initial informal interview promptly after his or her return to Service custody to afford the [noncitizen] an opportunity to respond to the reasons for revocation stated in the notification." 8 C.F.R. § 241.13(i)(3). Accordingly, in the event the government seeks to re-detain Mr. Bista in the future, it must provide notice and an opportunity to respond that comports with 8 C.F.R. § 241.13(i).

The government asserts that it has proceeded expeditiously despite the prolonged inability to provide travel documents for Mr. Bista (or to indicate whether they have even been sought) and has conceded that Mr. Bista has not caused any impediments to his removal to Nepal. Dkt. 8, at 6. The Court therefore finds that, consistent with the specific circumstances here, 8 U.S.C. § 1231, and 8 C.F.R. § 241.13, the government may not re-detain Mr. Bista unless:

> (1) He violates a condition of an Order of Supervision, and the government holds a hearing before a neutral decisionmaker at which the government bears the burden of demonstrating flight risk or danger to the community by clear and convincing evidence; or
>
> (2) The government (a) obtains a valid travel document to Nepal for him, (b) provides the valid travel document to him and his counsel, (c) offers Mr. Bista the opportunity to leave on his own within two months, and (d) Mr. Bista does not leave. Under such circumstances, the government may be permitted to re-detain petitioner provided it has already made concrete arrangements for him to be put on a flight to Nepal in the

reasonably foreseeable future.

*See, e.g.*, *Tang v. Bondi*, 2025 WL 3551381, at *3 (W.D. Wash. Dec. 11, 2025); *Do v. Scott*, 2025 WL 3496909, at *6 (W.D. Wash. Dec. 5, 2025).

### b. Third-Country Removal

The Court finds that the government may not remove or seek to remove Mr. Bista to a third country without notice and meaningful opportunity to respond in compliance with 8 U.S.C. § 1231(b) and the Due Process Clause. *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1019 (W.D. Wash. 2019); *Kumar v. Wamsley*, 2025 WL 3204724, at *2 (W.D. Wash. Nov. 17, 2025) (explaining such designations "are subject to the same mandatory protections that exist in removal proceedings"). The Court rejects the government's assertion that Mr. Bista's concern about third-country removal is not ripe because, as the government notes, third-country removal is statutorily authorized under 8 U.S.C. § 1231(b)(2), provided the destination offers safety from persecution or torture. Dkt. 8, at 7.

To comply with due process, the government must provide sufficient notice and a meaningful opportunity for the noncitizen to present any claim of fear of persecution or harm upon removal to a designated third country. *Aden*, 409 F. Supp. 3d at 1019. The INA prohibits ICE from removing a noncitizen to any country where their "life or freedom would be threatened . . . because of [their] race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The government must "make a determination regarding a noncitizen's claim of fear before deporting him." *Aden*, 409 F. Supp. 3d at 1010; 8 U.S.C. § 1231(b)(3)(A). Multiple courts in this district have held that, if a noncitizen claims fear of removal to a designated third country, the government must allow them to pursue withholding of removal through reopened removal proceedings before an immigration judge. *Aden*, 409 F.

Supp. 3d at 1011; *Baltodano v. Bondi*, 2025 WL 2987766, at *3–4 (W.D. Wash. Dec. 4, 2025); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 739 (W.D. Wash. 2025).

Should the government take steps to remove Mr. Bista to a country other than Nepal, it must provide him with written notice of its intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3). *Nguyen*, 796 F. Supp. 3d at 727. ("'[B]oth the due process clause and the governing statute place the burden on the government—regardless of whether the country of deportation is designated during or after the removal hearing—to provide a meaningful opportunity to be heard on asylum and withholding claims.' This cannot be satisfied by simply allowing the noncitizen to file a motion to reopen their removal proceedings; rather, the removal proceedings must be reopened so that a hearing can be held.") (quoting *Aden*, 409 F.Supp.3d at 1010–1011).

The Court finds, however, that the present record does not support Mr. Bista's contention that the government should at this time be enjoined from pursuing any form of third-country removal as punitive and therefore violative of the Fifth and Eighth Amendments. The government notes that "[n]o known attempts have been made to remove him to a third country." Dkt. 8, at 7. It is therefore unclear that additional, more sweeping injunctive relief—beyond written notice and a meaningful opportunity to respond in reopened removal proceedings—is currently necessary to prevent irreparable injury. Nothing in this order prevents Mr. Bista from pursuing additional relief if warranted by future events. *See Bhandari*, 2026 WL 369403, at *8.

## CONCLUSION

The Court **GRANTS** Mr. Bista's habeas petition. Dkt. 1.

1. The government is **ORDERED** to immediately release Mr. Bista from custody

and not to re-detain him without compliance with 8 C.F.R. § 241.13(i) and 8 U.S.C. § 1231. Given the current circumstances, this means that the government may not re-detain Mr. Bista unless:

    (1) He violates a condition of an Order of Supervision, and the government holds a hearing before a neutral decisionmaker at which the government bears the burden of demonstrating flight risk or danger to the community by clear and convincing evidence; or

    (2) The government (a) obtains a valid travel document to Nepal for him, (b) provides the valid travel document to him and his counsel, (c) offers Mr. Bista the opportunity to leave on his own within two months, and (d) Mr. Bista does not leave. Under such circumstances, the government may be permitted to re-detain petitioner provided it has already made concrete arrangements for him to be put on a flight to Nepal in the reasonably foreseeable future.

2. It is further **ORDERED** that if the government takes steps to remove Mr. Bista to a country other than Nepal, it must provide him with written notice of their intent to do so and a meaningful opportunity to respond in reopened removal proceedings before an immigration judge under 8 U.S.C. § 1231(b)(3).

3. Within **TWENTY-FOUR (24) HOURS** of this order, the government must provide the Court with a declaration confirming that Mr. Bista has been released from custody.

ORDER GRANTING HABEAS PETITION
AND GRANTING IN-PART INJUNCTIVE
RELIEF - 12

DATED this 25th day of February, 2026.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

ORDER GRANTING HABEAS PETITION
AND GRANTING IN-PART INJUNCTIVE
RELIEF - 13